PLEUS, C.J.
Sean Duff appeals his conviction for driving while license revoked as a habitual traffic offender in violation of section 322.34(5), Florida Statutes (2005). He argues that this conviction violated his right against double jeopardy because he had *927 already pled to and served a 30 day sentence for driving while license suspended, cancelled or revoked in violation of section 322.34(2). Both charges arose from the same driving incident. Although Duff acknowledges that these crimes contain different elements, he argues that successive prosecution and punishment for the greater offense violates the “degree variants” principle of Florida’s double jeopardy jurisprudence. We agree and reverse.
On August 9, 2005, Duff was stopped for speeding. A check of Duffs driver’s license status revealed that it had been revoked as a habitual traffic offender and had also been suspended numerous times. The arresting officer issued four traffic citations for speeding, passing in a no passing zone, having an expired driver’s license and driving while license revoked as a habitual traffic offender.
We note that both Duffs initial brief and the officer’s arrest affidavit refer to the last citation as one for driving while license suspended, but the actual citation refers to driving while license revoked as a habitual traffic offender in violation of section 322.34(5). Thus, Duff was never charged with driving while license suspended. A case based on the traffic citation for driving while license revoked as a habitual traffic offender was opened in county court, even though it was a felony charge. At the same time, a second case based on the arrest affidavit was opened in circuit court.
On August 30, 2005, the State filed an information for driving while license revoked as a habitual traffic offender in the circuit court case. On September 23, 2005, Duff appeared at a pretrial conference in the county court case. At that hearing, Duff asked if the State was offering anything to resolve the case. The State offered 30 days in county jail and stated that “it would just be a plea to the DWLS [driving while license suspended].” Duff clarified, “So I would be pleading to driving while my license is suspended and would be adjudicated guilty for that charge?” The judge responded, ‘Tes, sir.” The judge further stated that the State “probably could have filed this case as a felony, but chose not to do so.” Duff accepted the offer and the judge adjudicated him guilty of driving while license suspended or revoked. She then sentenced Duff to 364 days in jail with 334 suspended on the condition that he report to jail on October 3, 2005.
On September 26, 2005, Duff appeared at arraignment in circuit court and the court appointed a public defender to represent him. Duff filed a motion to dismiss based on double jeopardy. After a hearing, the court denied Duffs motion. Duff then filed a petition for writ of prohibition, which this Court denied without prejudice to raise the double jeopardy issue on direct appeal. See Duff v. State, 5D06-28 (Fla. 5th DCA 2006). Duff later pled no contest, reserving the right to appeal the denial of his motion to dismiss. The court adjudicated Duff guilty of driving while license revoked as a habitual offender and sentenced him to six months probation.[1]
On timely appeal, Duff argues that the trial court erred in denying his motion to dismiss because the State’s subsequent prosecution for driving while license revoked as a habitual traffic offender violated the “degree variants” principle of Florida’s double jeopardy jurisprudence.
Double Jeopardy Analysis
Both the Fifth Amendment to the United States Constitution and Article I, Sec *928 tion 9 of the Florida Constitution protect persons from being put in jeopardy twice for the same offense. Our supreme court recently reiterated that it looks to the Blockburger[2] test, as codified in section 775.021(4), Florida Statutes, to determine whether double jeopardy has been violated. State v. Paul, 984 So.2d 1167 (Fla.2006).
Section 775.021(4), Florida Statutes (2005), states:
(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:
1. Offenses which require identical elements of proof.
2. Offenses which are degrees of the same offense as provided by statute.
3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.
(Emphasis added).
The analysis involves two steps. Gordon v. State, 780 So.2d 17, 20 (Fla.2001). First, the court must determine whether the offenses each contain an element of proof that the other does not, as stated in section 775.021(4)(a). If they do not, double jeopardy bars multiple prosecutions or convictions. If they each contain separate elements, then the court must determine if one of the three exceptions in section 775.021(4)(b) applies. The first exception is merely a restatement of the same elements test in subsection (4)(a). The second exception is referred to as the “degree variants” test. The third exception deals with necessary lesser included offenses.
a. The Blockburger or “Same Elements” Test
Blockburger and section 775.021(4)(a) require courts to first examine whether “each offense requires proof of an element that the other does not....” This step is referred to as the “same elements” test. Paul, 934 So.2d at 1173.
In State v. Cooke, 767 So.2d 468 (Fla. 4th DCA 1999), the Fourth District applied the same elements test to the same two crimes involved in the instant case and concluded that the offenses were separate. Specifically, driving while license suspended requires proof the defendant knew his license was suspended. Driving while license revoked as a habitual traffic offender requires proof of revocation of the defendant’s driver’s license. Id. at 469. Consequently, double jeopardy did not bar a subsequent prosecution for driving while license revoked as a habitual traffic offender after the defendant had been acquitted of driving while license suspended. Id.
Duff concedes that under the same elements test, his offenses each contain an element different from the other. However, he argues that this Court should not follow Cooke for two reasons. First, Duff *929 claims that Cooke’s reasoning is erroneous because the term “offense” should be construed to include the “underlying factual transaction or occurrence upon which the State relies to proceed in the first criminal prosecution.” Presumably, Duff is assuming that for both crimes, the State would adduce proof of the same facts, ie. that on August 9, 2005, Duff was driving with a suspended or revoked license. This argument runs afoul of the “same elements” test, as expressed in the plain language of section 775.021(4)(a). That section states in pertinent part that “offenses are separate if each offense requires proof of an element that the other does not, without regard, to the accusatory pleading or the proof adduced at trial.” (Emphasis added). In other words, this test focuses on comparing the statutory elements, not the underlying pleadings or proof.
Duff also argues that Cooke does not control this case because the court in Cooke did not consider the “degree variants” exception in section 775.021(4)(b)(2).
b. The “Degree Variants” Exception
Section 775.02(4)(b)(2) provides an exception to the Legislature’s intent to “convict and sentence for each criminal offense committed in the course of one criminal episode or transaction” for offenses which are “degrees of the same offense as provided by statute.” Despite this statutory language, we have noted that the application of this exception “has become more complicated as it has been fleshed out.” Austin v. State, 852 So.2d 898 (Fla. 5th DCA 2008). In particular, the supreme court has employed various phrases over time to “flesh out” this exception.
For example, in Sirmons v. State, 634 So.2d 153 (Fla.1994), the supreme court held that convictions for grand theft auto and robbery with a weapon violated double jeopardy because they were “merely degree variants of the core offense of theft” or, stated differently, “both offenses are aggravated forms of the same underlying offense distinguished only by degree factors.” Id. at 154. However, in Gordon v. State, 780 So.2d 17 (Fla.2001), the supreme court noted that
Extended to its logical extreme, a broad reading of Sirmons and the second statutory exception would render section 775.021 a nullity. Indeed, the plethora of criminal offenses is undoubtedly derived from a limited number of “core” crimes. In no uncertain terms, the Legislature specifically expressed its intent that criminal defendants should be convicted and sentenced for every crime committed during the course of one criminal episode. See § 775.021(4)(b). The courts’ exceptions for homicides, which are discussed below, and theft, where the nature of the crime is often defined by degree of the violation, are consistent with the limited statutory exception. However, extension of this exception to multiple convictions for attempted first-degree murder, aggravated battery, and felony causing bodily injury would contravene the plain meaning of section 775.021.
Id. at 23. Consequently, the court looked to whether the crimes were intended to punish the same “primary evil”. Id. Both the supreme court and this Court have continued to follow the “primary evil” analysis in applying the “degree variants” exception in section 775.021(4)(b)(2). See Paul, 934 So.2d at 1175; State v. Florida, 894 So.2d 941 (Fla.2005); Lopez-Vazquez v. State, 931 So.2d 231 (Fla. 5th DCA 2006).
Duff argues that his convictions violate the degree variants exception because both offenses “punish the same core misconduct: driving a motor vehicle without a valid driver’s license.” He notes that this *930 Court in Roedel v. State, 773 So.2d 1280 (Fla. 5th DCA 2000), held that convictions for driving while license revoked as a habitual traffic offender and driving without a valid driver’s license violated double jeopardy.
Our analysis in Roedel is instructive. There, this Court stated that driving while license revoked as a habitual traffic offender and driving without a valid driver’s license are degree variants of the same core offense—unlawfully driving without a license. Id. at 1281. However, it noted conflict on this point with Lanier v. State, 226 So.2d 37 (Fla. 1st DCA 1969).
Lanier held the offenses of driving without a valid driver’s license and driving while license suspended constituted “separate and distinct evils.” Lanier, 226 So.2d at 39. Specifically, the First District concluded that driving without a valid driver’s license violated “an integral part of the state’s highway safety program calculated to insure that the operators of such dangerous instrumentalities be persons fully qualified to operate them in a safe and competent manner.” On the other hand, a person driving while license suspended “because of his own misconduct is not necessarily an unqualified operator but most certainly is acting in contempt and defiance of the law.” Id.
This court in Roedel disagreed with the reasoning in Lanier, stating:
However, a person who violates either or both of the laws can be viewed as an unqualified operator of a motor vehicle driving without a valid license and posing a threat to public safety. Both statutes address the dual concerns of promoting public safety and punishing those who ignore the law and drive without a valid license.
Roedel, 773 So.2d at 1282. We further found that driving without a valid driver’s license was a necessary lesser included offense of driving while license revoked as a habitual traffic offender. Id. In effect, we held that dual convictions for driving without a valid driver’s license and driving while license revoked as a habitual traffic offender, arising out of the same incident, violate double jeopardy because they are degree variants (same primary evil), contrary to section 775.021(4)(b)(2), and because one is a necessary lesser included offense of the other, contrary to section 775.021(4)(b)(2).
The State contends that Roedel is distinguishable from the instant case because the less serious offense in the instant case is not a necessary lesser included offense, as was the case in Roedel. There are two problems with this argument. First, not only is driving while license suspended not a necessary lesser included offense of driving while license revoked as a habitual offender, these two crimes are mutually exclusive. The plain language of section 322.34(2) (driving while license suspended) expressly excludes habitual traffic offenders. Specifically, it prescribes penalties for those who drive while license “canceled, suspended, or revoked as provided by law, except persons defined in s. 322.26A....” (Emphasis added). Section 322.264 is the habitual traffic offender statute. Instead, driving while license revoked as a habitual traffic offender is proscribed in section 322.34(5). Because these crimes are mutually exclusive, the Fourth District has held, without using the phrase “double jeopardy,” that dual convictions cannot stand. See Franklin v. State, 816 So.2d 1203 (Fla. 4th DCA 2002).
The second problem with the State’s attempt to distinguish Roedel is that it ignores the degree variants portion of Roedel’s analysis. Although the crimes in Roedel were slightly different than those in the instant case, its analysis applies to the instant crimes with equal force. Just *931 as this Court found that driving without a valid driver’s license and driving while license revoked as a habitual traffic offender address the same evils, the same can be said for driving while license suspended and driving while license revoked as a habitual traffic offender. Both of the instant offenses address the evil of defiance of the law. Consequently, Duffs convictions violate double jeopardy because the offenses are degree variants of the same primary evil. Roedel.
The State argues that these offenses “address different types of drivers and are not merely degree variants of one another.” Specifically, the State contends that section 322.34(2) is designed to punish those who knowingly drive while their license is suspended, whether it be for failure to maintain insurance, becoming delinquent in child support or a variety of other reasons for which a license may be suspended. On the other hand, section 322.34(5) punishes those who drive while license revoked as a habitual traffic offender, regardless of knowledge or the number of times it is done. The State notes examples of how someone can become a habitual traffic offender, such as manslaughter with a motor vehicle or failing to stop to render aid.
The State’s distinctions do not change the fact both offenses “address the dual concerns of promoting public safety and punishing those who ignore the law and drive without a valid license.” Roedel. Thus, they represent degree variants of the same offense rather than fundamentally different offenses.
One additional factor supporting this conclusion, although not dispositive by itself, is the fact that the Legislature placed both offenses in the same statute. Some courts have noted this factor in their analysis of the “degree variants” exception. For example, in Lopez-Vazquez, we concluded that offenses of shooting into and from a vehicle were degree variants of the same core offense. In addition, we stated:
We find further support for this conclusion from the fact that the two firearm statutes are included in chapter 790, Florida Statutes, entitled “Weapons and Firearms.” This fact is elevated to a level of significance by a general rule recognized and applied by this court and others, which provides that “degree crimes, or ‘degree variants,’ are oftentimes denoted in the same statutory chapter....” [State v.] Anderson, 695 So.2d [309] at 311 [Fla.1997] (footnote omitted); see also Lovell v. State, 882 So.2d 1107 (Fla. 5th DCA 2004). Although this general rule does not necessarily apply in all cases, we believe it does here and it suggests that both shooting offenses are degree variants of the same core offense.
Lopez-Vazquez, 931 So.2d at 235.
Based on the above analysis, we conclude that Duffs conviction for driving while license revoked as a habitual traffic offender violates the “degree variants” exception in section 775.021(4)(b)(2), Florida Statutes. However, we reject Duffs invitation to adopt a bright line rule under the “degree variants” exception that “if two charged crimes share a lesser included offense, or if one offense is a lesser included offense of the other, dual convictions necessarily violate double jeopardy.” Adopting such a rule would be an unwarranted judicial extension of section 775.021(4)(b)(3), in which the Legislature proscribed dual convictions for “[o]ffenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.” This exception applies only to necessary lesser included offenses. See Gordon, 780 So.2d at 21, n. 3. If the Legislature wants to expand this exception *932 to include Duffs proposed categories, it should do so.
c. The Same Conduct Principle
Duff also argues that his two crimes violate the “same conduct” principle enunciated in Grady v. Corbin, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). The Grady court held that double jeopardy bars subsequent prosecution in any case in which the government, “to establish an essential element of an offense charged in the prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.” Id. at 520, 110 S.Ct. 2084. This Court followed the “same conduct” principle of Grady in Williams v. State, 601 So.2d 1253 (Fla. 5th DCA 1992).
However, the Supreme Court later eliminated the “same conduct” principle, overruling Grady in U.S. v. Dixon, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). Duff acknowledges Dixon, but argues that the “same conduct” principle is still valid in Florida because Williams has not been overruled.
The State correctly argues that Florida courts now follow Dixon, not Grady. See, e.g., Gaber v. State, 684 So.2d 189, 191-92 (Fla.1996). Duff attempts to distinguish Gaber by arguing that it involved successive convictions, not successive prosecutions, as do Williams and the instant case. Duffs argument falls short for a couple reasons. First, Dixon was a successive prosecution case, so Duff cannot directly distinguish Dixon on that ground. Second, Duff ignores State v. Johnson, 676 So.2d 408, 410 (Fla.1996), a successive prosecution ease which expressly recognized the fact that Dixon overruled Grady’s “same conduct” test. Florida no longer follows the “same conduct” test.
We reverse Duffs subsequent conviction for driving while license revoked as a habitual traffic offender because it violates the “degree variants” principle of double jeopardy, as codified in section 775.021(4)(b)(2), Florida Statutes (2005).
REVERSED.
GRIFFIN and ORFINGER, JJ., concur.

. Although Duff has presumably completed his probationary sentence, his appeal is not moot. See Hagan v. State, 853 So.2d 595 (Fla. 5th DCA 2003) (holding appeal not moot because defendant challenged legality of conviction, not legality of sentence).

. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).